# *Freedom of Information and Privacy Acts*



# *Federal Bureau of Investigation*

ITEM: 016                                                   SOURCE: 011
   NAME STEIN MART, 1155 MOUNT VERNON HIGHWAY, DUNWOODY, GA
   PERSONNEL RECORD
   PROVIDER FELICIA D. PRICE, ASSISTANT STORE MANAGER
   SF RELEASE
   NO RECORD

ITEM: 016    INVESTIGATOR'S NOTE                            SOURCE: 012
   PRICE REMEMBERED REVIEWING HIS PERSONNEL FILE IN JANUARY 2000, BUT
   COULD NOT LOCATE HIS FILE.

ITEM: 016                                                   SOURCE: 013
   NAME FELICIA D. PRICE, ASSISTANT STORE MANAGER, STEIN MART, 1155 MOUNT
        VERNON HIGHWAY, DUNWOODY, GA

   ACCEPTABLE
   PRIMARY ASSOCIATION SUPERVISOR
   AVERAGE EXTENT OF CONTACT REGULAR
   SPAN OF CONTACT 2 WEEKS IN JANUARY OR FEBRUARY 2000

   NO REASON NOT TO RECOMMEND

   PRICE MET HIM IN JANUARY OR FEBRUARY 2000 WHEN HE APPLIED FOR A SALES
   POSITION AT STEIN MART. AFTER PRICE REVIEWED HIS PERSONNEL FILE,
   PRICE INTERVIEWED AND HIRED HIM (DISCREPANT). THEY HAD CONTACT FOR
   ABOUT 1 MONTH AT WHICH TIME HE LEFT ON GOOD TERMS. THEY HAD NO OTHER
   CONTACT. PRICE WOULD RE-HIRE HIM. PRICE BELIEVED HE LEFT FOR A
   BETTER EMPLOYMENT OPPORTUNITY.

ITEM: 016                                                                    SOURCE: 011
    NAME STEIN MART, 1155 MOUNT VERNON HIGHWAY, DUNWOODY, GA
    PERSONNEL RECORD
    PROVIDER FELICIA D. PRICE, ASSISTANT STORE MANAGER
    SF RELEASE
    NO RECORD

ITEM: 016    INVESTIGATOR'S NOTE                                             SOURCE: 012
    PRICE REMEMBERED REVIEWING HIS PERSONNEL FILE IN JANUARY 2000, BUT
    COULD NOT LOCATE HIS FILE.

ITEM: 016                                                                    SOURCE: 013
    NAME FELICIA D. PRICE, ASSISTANT STORE MANAGER, STEIN MART, 1155 MOUNT
         VERNON HIGHWAY, DUNWOODY, GA

    ACCEPTABLE
    PRIMARY ASSOCIATION SUPERVISOR
    AVERAGE EXTENT OF CONTACT REGULAR
    SPAN OF CONTACT 2 WEEKS IN JANUARY OR FEBRUARY 2000

    NO REASON NOT TO RECOMMEND

    PRICE MET HIM IN JANUARY OR FEBRUARY 2000 WHEN HE APPLIED FOR A SALES
    POSITION AT STEIN MART. AFTER PRICE REVIEWED HIS PERSONNEL FILE,
    PRICE INTERVIEWED AND HIRED HIM (DISCREPANT). THEY HAD CONTACT FOR
    ABOUT 1 MONTH AT WHICH TIME HE LEFT ON GOOD TERMS. THEY HAD NO OTHER
    CONTACT. PRICE WOULD RE-HIRE HIM. PRICE BELIEVED HE LEFT FOR A
    BETTER EMPLOYMENT OPPORTUNITY.

EXTRA COVERAGE UNABLE TO COMMENT - ALL

ITEM: 016                                                              SOURCE: 014
   NAME KENDALL J. BROWN, MEN'S MANAGER, STEIN MART, DUNWOODY, GA

   ~~ACCEPTABLE~~
   PRIMARY ASSOCIATION ~~SUPERVISOR~~
   AVERAGE EXTENT OF CONTACT REGULAR
   ~~SPAN OF CONTACT 1 WEEK IN JANUARY OR FEBRUARY 2000~~

   ~~DOES NOT KNOW WELL ENOUGH TO RECOMMEND~~

   THEY MET WHEN HE WAS HIRED AS A FULL TIME SALES PERSON IN THE MEN'S
   DEPARTMENT AT STEIN MART, DUNWOODY (DISCREPANT). BROWN WAS HIS FIRST
   LINE SUPERVISOR AND THEY HAD DAILY WORK CONTACT FOR ABOUT 2
   WEEKS. THEY HAD NO SOCIAL CONTACT. THEIR CONTACT CEASED WHEN HIS
   EMPLOYMENT WITH STEIN MART ENDED.

   HIS EMPLOYMENT AT STEIN MART IN EARLY 2000 ENDED WHEN BROWN TERMINATED
   HIM. THE LAST DAY HE WORKED HE WAS RECEIVING MANY TELEPHONE CALLS ON
   HIS CELL PHONE WHILE ON THE STORE FLOOR. BROWN TOLD HIM THAT HE
   SHOULD NOT BE TALKING ON A CELL PHONE ON THE SALES FLOOR. HE ANSWERED
   BROWN, "I DON'T SEE IT BEING A PROBLEM". HE AND BROWN EXCHANGED A FEW
   WORDS AND THE CONVERSATION BECAME "HEATED". BROWN TOLD HIM TO GO INTO
   THE ADMINISTRATION OFFICE WHERE THEY COULD DISCUSS THE SITUATION.
   BROWN THEN ASKED HIM WHY HE HAD NOT PERFORMED 2 TASKS THAT BROWN HAD
   ASKED HIM TO DO. HE GAVE A NON-CHALANT ANSWER INFORMING THAT IT WAS
   TOO MUCH WORK. BROWN COULD NOT REMEMBER THE ACTUAL ANSWER. HE THEN
   TOLD BROWN, "WHEN I WORKED HERE BEFORE I DID NOT DO THIS MUCH WORK".
   "I DO NOT NEED THIS JOB". AT THAT TIME BROWN TERMINATED HIM.

   EXTRA COVERAGE UNABLE TO COMMENT - ALL

ITEM: 016                                                              SOURCE: 015
   NAME EVETTE D. WOODS, LINENS & CHILDRENS MAN., STEIN MART, DUNWOODY, GA

   ACCEPTABLE
   PRIMARY ASSOCIATION COWORKER
   AVERAGE EXTENT OF CONTACT REGULAR
   SPAN OF CONTACT SPRING 1997 TO FEBRUARY 2000

   NO REASON NOT TO RECOMMEND

   THEY MET WHEN HE BEGAN WORKING AT STEIN MART IN DUNWOODY, GEORGIA, ON
   A PART TIME BASIS, ABOUT 30 HOURS A WEEK. THEY HAD WORK CONTACT 3 OR
   4 DAYS A WEEK. HE WORKED ABOUT 2 OR 3 MONTHS, AND RESIGNED FOR OTHER
   EMPLOYMENT. THEY HAD NO CONTACT FROM THE SUMMER OF 1997 UNTIL JANUARY

```
NAME CLEMMONS, SAMUEL LENNIOUS, JR.                    | CASE # 00008928 | PAGE    8
DATES OF INVESTIGATION 07/05/00 - 07/11/00 | SID 0385 | ORG ID P93 | REPORT #   1
```

OR FEBRUARY 2000. HE WAS SHOPPING IN STEIN MART AND ASKED WOODS IF THERE WERE ANY OPENINGS. SHE TOLD HIM TO SPEAK TO FELICIA PRICE ABOUT BEING HIRED. HE WAS HIRED AND BEGAN WORKING 1 OR 2 DAYS LATER. HE WAS IN THE MEN'S DEPARTMENT, WOODS WAS IN A DIFFERENT DEPARTMENT, THEY ONLY HAD CONTACT IN PASSING AT STEIN MART. THEIR CONTACT CEASED WHEN HE LEFT ABRUPTLY. WOODS HAS NO KNOWLEDGE WHY HE LEFT. THEY HAD NO CONTACT OUTSIDE THE WORK ENVIRONMENT.

THE ONLY COMMENT THAT WOODS COULD PROVIDE REGARDING LAW ENFORCEMENT POSITIONS WAS THAT HE WAS FORMER MILITARY.

EXTRA COVERAGE

ADAPTABILITY; FLEXIBILITY; ACCEPTANCE OF TRAINING AND CRITICISM
    UNSPECIFIC BUT FAVORABLE

ANALYTICAL ABILITY; MANAGEMENT OF TIME AND RESOURSES;
ABILITY TO RECOGNIZE LEADS, INCONSISTENCIES, DISCREPANCIES,
AND PATTERNS + DILIGENCE IN PURSUIT OF INFORMATION
    UNABLE TO COMMENT

APPEARANCE AND MANNER; ABILITY TO SPEAK/WRITE IN A CLEAR AND
GRAMMATICALLY CORRECT MANNER, APPROPRIATE IN BOTH STYLE AND
LANGUAGE; ABILITY TO SUMMARIZE INFORMATION AND TO ORGANIZE
    HE WAS ALWAYS WELL DRESSED AND POLITE.

ABILITY TO WORK INDEPENDENTLY; FOLLOW RULES; DISCRETION;
OBJECTIVITY; SENSE OF RIGHTS OF OTHERS; PERSONAL HONESTY
    UNSPECIFIC BUT FAVORABLE

ABILITY TO ESTABLISH RAPPORT AND ELICIT COOPERATION;
INTERVIEWING SKILLS; FRIENDLINESS
    HE WORKED WELL WITH THE CUSTOMERS WHEN HE AND WOODS WORKED TOGETHER IN
    1997.